181800 Jose Aponte-Davila v. Municipality of Caguas Good morning Mr. Rojas, good morning your honors, and may it please the court. My name is David Roman and I represent Jose Aponte-Davila in this case. I respectfully request to allow 4 minutes for rebuttal from the 10 minutes that are allotted to me. Fine. Thank you your honor. Your honors, Mr. Aponte here appeals the dismissal of the complaint because the district court wrongly determined that he was not domiciled in Puerto Rico, rather he was domiciled in Puerto Rico at the time the complaint was filed, when in fact he was domiciled in Texas. That is to say that on May 9, 2013, when the complaint was filed, he was a Texas domiciliar. Now as recently as 2 days ago, this court reiterated the standard that applies to a case like this. In Baskin and Robbins franchising, it should just this past Monday, the court wrote that when the lack of jurisdiction order is based on the prima facie record, as it is in this case, appellate review is de novo. That Baskin and Robbins is about personal jurisdiction, it's not about establishing domiciliary status for diversity purposes, it may well still be the case that the prima facie case rule applies in that situation. Did the district court here say it was employing the prima facie case methodology? Yes it did. It did your honor. In fact it announced that to the parties when it asked each of the parties to file simultaneous motions on the issue of jurisdiction and that it would decide the motion without a hearing based on the record and the parties agreed to that. So that is the procedure that was used by the district court. Okay so there's not really any dispute about this being a prima facie case evaluation. That's correct. And as such your honor, in that type of analysis, the facts must be viewed in the light most congenial to the jurisdictional claim. And what in fact Mr. Aponte showed below is that on the day the federal complaint was filed, he was physically in Texas and secondly he had the intention of remaining in Texas. Now I'll address each of those two points separately. First, the proof that he was physically in Texas comes in two parts. The first part is the document which is included in our filings from the Texas Department of Public Safety that shows, well let me back up, the first item is Mr. Aponte's statement himself. In the motion in support of jurisdiction he filed a statement under penalty of perjury where he explains that. Now I understand that that alone is not enough but the facts of the case corroborate and support that statement. He said that he went back to Texas at the end of April of 2013. What's important to note about that is that he was not going to Texas to establish a domicile. He was simply returning to Texas where a domicile had already been established. But be that as it may, at the end of April he returned to Texas and shortly thereafter he removed his Texas commercial driver's license which had expired while he was in Puerto Rico convalescing from his illness. That driver's license requires a physical examination and the Texas Department of Public Safety document, the abstract, the official record, is that the physical examination was performed precisely on May the 6th. That's significant because it's three days before the federal complaint was filed. That's what shows that he was in Texas. In addition, the issuance of the license is important because commercial driver's licenses are only issued in accordance with federal law, the Federal Motor Safety Act. And that requires that the license, that no person shall operate a commercial motor vehicle without such a license. Mr. Ote, it's undisputed, his career in Texas was that of a long-distance commercial driver. So he needed that license. Federal regulation also provides that a state may issue such a license only to persons whom the state is the state of domicile. And domicile is defined also in the federal regulation as the standard definition the court is familiar with. That it is a place where the person has his true fixed or permanent home and principal residence and to which he intends to return whenever he is absent. Mr. Lamont, the district court looked at the document which contains the May 6th date from the Texas Department and concluded that no reasonable person looking at that document could conclude that it was proof he was in Texas on that date. I don't understand that ruling. It seems to me it's probably clearly erroneous. But even if he was there on that date, what is the evidence that he intended his domicile to continue in Texas? He had only gotten back there a few days before you filed the complaint in Puerto Rico. I assume you waited to file the complaint until he was back there. Well, the fact is that he was back there when it was filed. And having established that, as your Honor points out, the relevant factor there becomes his intention to stay. And yet everything in the record shows that he had a career as a long-distance truck driver in Texas since 2004. And he was in Puerto Rico to recover from an illness. And his previous trips to Puerto Rico in the 10-year period from 2004 to 2014 were always specifically for a particular reason. Either to care for his father who needed help while he was sick or for his own medical recuperation. Each of those trips were limited in purpose.  And the curious thing is that, in fact, he could not have established a Puerto Rico domicile because he had no intention of remaining in Puerto Rico during those years. My time is up, your Honor. I'll now address the rest of the rebuttal. Thank you. Thank you. Mr. McCollum, good morning. Good morning, your Honors. If it may please the Court, Michael McCollum, I represent the municipality of Coglis. On one point specifically, your Honors, as to the hearing itself, at the status conference we had with Judge Delgado, Judge Delgado's intent originally was to hold a hearing. And the plaintiff's counsel suggested that there be no hearing because they didn't have a trial date that it could be on the papers. And at no point have they requested a hearing at any time since then. So I think based on Valentin authority, it's through their own actions that no evidentiary hearing was held. Yeah. So what? You didn't impose that. At that point we agreed to it. But the genesis of it was plaintiff's counsel's suggestion. So are you saying that the standard review is not de novo? I'm saying that as to the – Are you saying that standard review is not de novo? It depends on which issue. On the rulings, I understand that under the Valentin case, the fact – the differential fact finding is under the clearly erroneous standard. That's how I read the Valentin case. But the ultimate conclusion as to where the domicile is, are you saying that's not de novo? No, I'm not saying that. The ultimate legal question to the extent the judge applied the law correctly would be a de novo standard. So what's the – what turns on – what do you think is centered to the clear error standard that matters? Well, two things. If I could just focus on one aspect of the standard. Because the first aspect of it is that you have to be physically present in the jurisdiction on the day the complaint is filed. And I would say that – and there's a long line of authority, the progeny of Texas v. Florida, that we cite in our brief, that says it's not enough to do a statement of the plaintiff's to establish physical presence in there. You have to have something beyond it. We have not a single contemporaneous document prior to the filing of the complaint, May 9th, issued that shows he was physically present there. There's not a plane ticket. There's not a boarding pass. There's not a – buying a bottle of water in – you know, during that week and a half he was there. There's nothing in the record. The sole document that they're relying to prove that he was allegedly present in Texas on April 30th or on May 9th when it was filed is two documents. The Wells Fargo – the page two of the Wells Fargo document and the certification. The certification itself has a – to explain what I think the judge's ruling on that is, because the certification from the Texas agency is not for an issuance of a license on May 6th. It's for an issuance of a license on September 30th. And now what they're using, even if you allow that the document itself would come in itself, it's hearsay within hearsay because they're doing it for the proof of a second document, a document of a medical examination that was never produced. The name of the doctor, Dr. Garza, was never given to us during the discovery period, despite the fact that we specifically ask in that for any person who evaluated him from the filing of the complaint, from the time period of that to the date of that. This is an official record of the state of Texas which says that there was a medical examination on May 6th. How could you make a finding from that that no reasonable person could read that document to suggest he was there on May 6th? Because – I would say, Your Honor, as to the complaint of – You didn't argue to us that the document is inadmissible. It's an official record. I'm not saying that the document itself doesn't come in. I would – you know, I would – after a briefing on the reply, I think the document itself comes in. But you have a separate level of that because what they're trying to do is use it for proof of an expensive document that was never produced. Well, it proves at least that he was there on the day the examination was taken. Let me give you an example. Can you just answer that question? I think that without seeing the document, it's unreliable. We don't know that. And I'll give you a clear example. Excuse me. Yes, Your Honor. So you're saying the document is admissible, but it's not admissible for the truth of the information contained in it. The document is – Is that your argument? The argument is – Can you just please answer my question? Your Honor, the document is admissible, and that if they were offering it for the truth that a certification was done as of that date, it does. But it's not admissible for the second document in there that a medical examination was on May 6th. And I think there's an inherent ambiguity, and we have this in depositions in Puerto Rico all the time, without seeing the source document, because sometimes, based on whether they're Spanish or English, when you put the date of the month first, it can be either May 6th or it can be June 5th, depending on whether, in the Spanish tradition, Dr. Garza did the date and the month and then the year. What is the standard in Texas as far as calendars go? I don't know without seeing Dr. Garza's document. Normally, in discovery, we ask the proponent, the witness, which do you mean? If it's 13th, you don't have this. But anything below 12 could be a month or a day. And normally, if this had been disclosed to us, we would have been able to do it. This is why I'm here saying it's inherent. Did you argue below that it could not be relied on for that purpose? No, and the reason why— Can I— No. Okay, so you did argue below that it couldn't be used for that purpose. So what's the relevance of you now saying it can't be used for that purpose? Because, Your Honor, the argument that they made in the brief was never made below. If you look at the 53 pages of Document 195, they attach this as one of 46 exhibits. They don't reference the medical exam, the date of that, anywhere in there, for what they put front and center on appeal. If they had done it at that point, then we would have had a calendar— You're saying they didn't argue to the district court that this document could supply the basis for concluding that he was present? Correct. It's an exhibit that— Did you argue to us that they waived that argument? So I don't think we did, Your Honor. So then how are we supposed to now treat that as an argument that's before us? Well, I understand that— So basically what we've got, we've got a document in the record that, when you look at it, seems to suggest he was there. You didn't tell anybody below that you can't look at it for that purpose. And you didn't say here that he ever apprised people below that you could look at it for that purpose. So how can we just disregard it? Your Honor, I would say that what the judge did here, he did simultaneous briefs. He said that we didn't have a right to do it. And this argument, we didn't know at that juncture we had to raise it. And I think this goes to subject matter jurisdiction. We can come here two years later on the same document. Either it's enough or nothing else to establish he was there or it's not. And I think— Do you want to turn to a different argument? His time is up. I guess I will not then. Okay, thank you, Your Honor. I'm sorry. Did you want to ask that question anyway? Don't we need to hear from the other counsel? Well, it was our third— Yes, but is your rebuttal merely to this argument? No, I was just going to make the rebuttal. But there's still one more. Mr. Bontire has three minutes. Yes, good morning, Your Honors. My name is Pablo Bontire. I represent Consolidated Waste Services and Mafepaico Insurance Company. On this issue, we are in the same position as the other defendants in this case. From the documents, from when we started doing this inquiry, the first interrogatory we notified to plaintiff was for them to notify us documents which proved that he was physically present or that he was domiciled in Texas at the time of the filing of the complaint. None of the documents provided by plaintiffs at that time were even— Well, they were all dated two or three months after the filing of the complaint. That was the first thing we received from plaintiffs at that time. It wasn't until we—the defendant's subpoena, like, I don't know, it was like maybe ten different parties from Texas that we started receiving documents that even mentioned— or like the documents that Mr. Malone was discussing that even mentioned or had any date or— The particular document that we're talking about was in response to your subpoena? Subpoenas, that's correct. And not produced by the plaintiff? Correct. And that's a document which in itself is dated October 2013 while the filing of the complaint took place in May 9, 2013. So we presented in our argument, like the question Judge Brown was making, we presented that document just to show that this document was dated October. We didn't show it to the fact that there had been an evaluation previous to May 6, 2013. And none of the documents provided by plaintiffs— But you didn't—if I understand your argument now, you're saying that plaintiff can't rely on that document because plaintiff never asserted below that that document could be a basis for finding domicile. Is that what you're trying to say to us? No, I'm saying that the reason that we presented it— I understand that, but what's the significance of that? Is the significance of that that you want to say, therefore, plaintiff can't rely on that document to find domicile because the plaintiff never presented that document in support of its domicile argument? Let me see. So what's the significance of what you're saying? I don't understand why that matters. It might be true, but I don't know why we should care. The reason that we presented it is just to represent that he was— he was licensed in October 2013, and he was presented as a document to prove domicile. Great, but if the document also has this other feature, that it provides information that supplies support for domicile— That's correct. If you're not arguing that he waived any right to rely on that document for that purpose, then there it is. The document's there, and it either supports it or it doesn't support it. That's correct, Your Honor. It has to be taken into consideration with the ties that he had in Texas to the ties that he had in Puerto Rico. Thank you. Mr. Romano, you have four minutes. Thank you, Your Honor. May it please the Court. In response to Judge Barron's concern, simultaneous motions were filed per instructions of the district court on jurisdiction. The district court specifically said that no replies would be allowed. Notwithstanding, after they both were filed, sometime later, defendants did file a motion objecting to certain of the documents that were submitted in support of Plaintiff's motion. And nowhere in that list of documents objected to is the Texas record document included. In other words, even though the district court told them they could not reply, they did reply, and they complained about other documents, but not this one. Was the Texas document submitted by you in support of the domicile argument? It was submitted to show, yes, that he used that document. Yes. Yes, we filed it in our motion. And it was a document that was presented to establish that he had a Texas driver's license and that it was a commercial driver's license. And in the course of that, did you in fact argue to the district court that not only does it show the application for a license, but it shows he was there on May 6th? We did not argue specifically about the May 6th presence. The document, however, was submitted. It's in the normal review that this court can do. It is entitled to consider that document for all of the evidential purposes. But that's the district court in a funny position, which is that you don't alert the district court to the fact that there is a key fact in this that supports your domicile argument. The district court then makes a conclusion that just looking at it, the fact that he got the driver's license doesn't show that he was present. Then on appeal, you say, well, if you look at the terms that he did that document, you'll see there's actually evidence that he was there, even though the district court's never told that? Well, for one thing, the district court did not allow any replies to the motions that were presented. But you don't need a reply. You just need to make it the first time in the argument. And we didn't. We submitted it. No, but you didn't submit it with any indication that the thing that you're now saying is key to the domicile argument was relevant. The entire document is relevant. There's more than that in that document. You showed it only for purposes. I thought you just represented to us that your argument to the district court was solely that that document matters to show he had a license. You're now saying that's your case terms on the fact that that document shows that he was present prior to May 9th. But you never informed the district court that the document was your basis for that conclusion. But in order to obtain that license, he had to be medically examined, and the medical examination took place on the 6th. That's part and parcel of the entire document. The federal regulation requires that information to be provided, requires that examination. Was there any reference to that in any of your papers below to the district court? Not that specific argument, because we were not aware that that was an issue. What was the basis to the district court for your argument that he was present, besides his own statement? Anything? The Texas Department of Public Safety document that shows that a driver's license was issued. How does the issuance of a driver's license show that he was present? Because it's a commercial driver's license, and a commercial driver's license requires a physical examination. The physical examination was conducted on May 6th. So are you saying that effectively you did make that argument? It was obvious that you were arguing that that document was being entered for the purpose of showing not just that he got the license, but that he was present due to the medical examination? Yes, Your Honor. It's the entire document. Because included in that document is a notation that he requires a corrective lenses, and that can only be determined by a physical examination. Now, as to Judge Stolich's concern about showing intent, we submit that everything, all of the Bank 1 factors, the so-called Bank 1 factors, there are several that are included in this case, his getting a bank account, voting, applying for Social Security disability, that he purchased a truck, all of that establishes that, and the Court may use facts that occurred after the filing of the complaint. Yes, yes, obviously. Footnote 6 of the District Court opinion, as indicated above in page 6, plaintiff also asserts to have renewed his Texas license on May 6, 2014. That's correct. Is that the contention that you presented to the District Court, the renewal, what, started on May 6? Yes, that he, Mr. Bunter, returned to Texas on April the 30th, and that on May the 6th he applied for and received a commercial driver's license. But there's no reference in any of that to the medical examination. It's also part of the statement he made that he underwent a physical examination in support of that license. All of that is included in his statement. These documents really corroborate what he included in his sworn statement, and they support that. That's what makes it applicable because it's not just taking his sworn statement, it's taking the documents that support that sworn statement. And all of that was included, none of that was objected to. Did he say either on May 6 I had the medical exam, or I had the medical exam before the date that I filed? No, Your Honor, he did not state that he had it before May 6, which is the date that appears in the Texas document. What he stated was that on May 6 he went and formalized a proceeding to get his driver's license issued. Okay.  Thank you.